UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALESIA W.,[1] | : | Case No. 2:25-cv-00046 |
| | : | |
| Plaintiff, | : | District Judge James L. Graham |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Alesia W. brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #15), and the administrative record. (Doc. #7).

**I.      Background**

The Social Security Administration provides DIB and SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

In the present case, Plaintiff applied for DIB in August 2021 and SSI in July 2022, alleging disability due to several impairments, including a blood disorder and leaking heart valve. (Doc. #7-6, *PageID* #565).  After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Jason P. Tepley on October 16, 2023.  (Doc. #7-2, *PageID* #s 98-120).  Thereafter on November 17, 2023, ALJ Tepley issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. #7-3, *PageID* #s 178-203). The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. *Id.* at 204-09.

On remand, the claim was returned to ALJ Tepley, who held an additional hearing on September 30, 2024. (Doc. #7-2, *PageID* #s 69-97). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3]  He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since January 1, 2021, the alleged onset date. |
| Step 2: | | She has the following severe impairments: anemia; a history of syncope; a history of menorrhagia; hypothyroidism; mitral valve prolapse; systolic/congestive hearing failure; supraventricular tachycardia; hypotension; hemophilia A carrier; obesity; and somatic symptom disorder. |
| Step 3: | | She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity (RFC), or the most she can do, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability to perform "sedentary work… except she reported she could occasionally climb ramps and stairs; she could occasionally stoop, kneel, crouch, and crawl; she should avoid climbing |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

      ladders, ropes, and scaffolds; she should avoid exposure to unprotected heights or moving mechanical parts; she should avoid commercial driving; she should avoid exposure to extreme cold, extreme hot, humidity, vibration, dust, odors, fumes, and pulmonary irritants; and she could understand, remember, and carry out simple tasks."

      She has no past relevant work.

Step 5:  Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers that Plaintiff can perform in the national economy.

(Doc. #7-2, *PageID* #s 47-59). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2021, though the date of the decision, October 22, 2024. *Id.* at 59-60.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 43-60), Plaintiff's Statement of Errors (Doc. #11), and the Commissioner's Memorandum in Opposition (Doc. #15). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.**  **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.     Discussion

Plaintiff first argues that the ALJ failed to properly evaluate medical source opinion evidence from the consultative examiner, Susan Rowland, Ph.D., RN, and treating physician, Amy L. Dunn, M.D. (Doc. #11, *PageID* #s 1917-20). Second, Plaintiff contends that the ALJ reversibly erred at Step Three of the sequential evaluation process by failing to find her Hemophilia A carrier (Congenital Factor VIII Deficiency) meets the criteria of Listing 7.18. *Id.* at 1920-21. Finally, Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence. *Id.* at 1921-23.

The Commissioner contends that the ALJ properly considered the medical opinions. (Doc. #15, *PageID* #s 1935-37). Additionally, the Commissioner argues that Plaintiff's impairments did not meet or medically equal Listing 7.18, thus the ALJ did not commit reversible error at Step Three. *Id.* at 1937-39. Finally, the Commissioner contends that substantial evidence supports the ALJ's decision. *Id.* at 1939-40.

A. **The ALJ's Evaluation of Medical Source Opinions of Record**

Since Plaintiff filed her applications after March 27, 2017, they are governed by the regulations describing how evidence is categorized, considered, and articulated when a residual functional capacity is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the

5

medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

*The Consultative Examiner, Susan Rowland, Ph.D.*

Dr. Rowland examined Plaintiff on February 2, 2022. (Doc. #7-7, *PageID* #s 899-912). Plaintiff reported that she lives in a duplex with her sister and two children, travels by getting [rides] or using public transportation, does not need reminders to complete personal care tasks, sometimes goes to the recreation center or library, and is responsible for herself. *Id.* at 905. She also indicated that, while she is minimally able to cook/prepare simple meals, do household chores,

attend medical appointments, exercise, and visit family and friends, she is fully able to go grocery shopping, manage money, count change, pay bills, use the Internet, read, attend religious services, participate in social clubs or sports, and volunteer. *Id.* at 906. However, she reported that she is unable to receive visits from family and friends, as she does not want to do so. *Id.*

On mental status examination, Plaintiff was unable to perform serial subtraction 7s without a number of errors, which was believed to be more a function of an intellectual deficit rather than a problem with concentration. *Id.* at 907. She appeared to have "a limited appreciation of her strengths and weaknesses." *Id.* at 908. Dr. Rowland diagnosed Plaintiff with somatic symptom disorder and opined that in "an employment position appropriate for her current circumstances" she would not have significant limitations conforming to social expectations and "appears capable of managing at least basic tasks and interactions with simple instructions." *Id.* at 909. Dr. Rowland opined an ability to deal with normal pressures in a competitive work setting "accomplishing simple tasks with clear, simple instructions." *Id.* at 911.

The ALJ considered Dr. Rowland's opinion as follows:

> Following the psychological consultative examination, *** [Dr. Rowland] opined that [Plaintiff] exhibited the ability to understand, carry out, and remember simple instructions (B7F/13). This is supported by [Dr. Rowland]'s rationale, including citation to [her] own findings. Further, it is consistent with the overall record, which shows little treatment seeking for mental health.

(Doc. #7-2, *PageID* #57).

Plaintiff argues this evaluation constitutes error because the ALJ found the opinions of Dr. Rowland supported by the record, but then his RFC determination was inconsistent with Dr. Rowland's limitations. (Doc. # 11, *PageID* #1918). Specifically, Plaintiff contends that the ALJ's

7

RFC including only a "simple tasks" limitation does not account for Dr. Rowland's "clear, simple instructions" limitation. *Id*. at 1918-19.

For the following reasons, the undersigned finds Plaintiff's argument unpersuasive. A "simple tasks" limitation "addresses limitations in understanding and remembering instructions." *Foster v. Comm'r of Soc. Sec.*, No. 1:13-CV-418, 2014 WL 3536603, at *3 (S.D. Ohio June 23, 2014) (Bowman, M.J.), *report and recommendation adopted*, No. 1:13-CV-00418, 2014 WL 3543818 (S.D. Ohio July 16, 2014) (Spiegel, D.J.). Furthermore, it stands to reason that simple tasks will not require complex, multi-step instructions to complete them. Finally, despite Plaintiff's lack of mental health treatment, the ALJ included the simple tasks limitation in Plaintiff's mental RFC because he found "[Plaintiff's] somatic symptom disorder to be severe" and agreed with Dr. Rowland's findings that Plaintiff had a limitation "in the ability to understand, remember, and carry out more than simple tasks." (Doc. #7-2, *PageID* #56). Notably, no other medical source in the record opined that Plaintiff was limited mentally, much less more limited than the limitation contained in the ALJ's mental RFC determination. Therefore, the undersigned finds the ALJ did not err when including a "simple tasks" limitation and not a "simple instructions" limitation in Plaintiff's RFC.

*Plaintiff's Treating Hematologist, Amy Dunn, M.D.*

Dr. Dunn reported on July 7, 2023, that Plaintiff is a carrier of hemophilia A and "experiences excessive bleeding, especially heavy menstrual bleeding that has required frequent care up to and including a recent endometrial ablation." (Doc. #7-8, *PageID* #1287). Dr. Dunn noted that, as a result of Plaintiff's frequent and heavy bleeding, "she experiences fatigue and chronic pain, and frequent emergency department visits." *Id*. Dr. Dunn indicated that these

episodes "are sporadic and cannot be predicted despite multiple medical approaches", opining that "these episodes make it difficult to carry out full time employment." *Id.*

In evaluating Dr. Dunn's narrative assessment, the ALJ stated that, "the ultimate determination of the ability to work is an issue reserved for the commission[er], as such, Dr. Dunn's assessment is neither valuable nor persuasive." (Doc. #7-2, *PageID* #56).

Plaintiff argues that the ALJ failed to account for Dr. Dunn's indication that she will experience sporadic, unpredictable episodes necessitating treatment. (Doc. #11, *PageID* #1919). She contends that Dr. Dunn's assessment is consistent with the record, pointing to the letter of Linda Vo, LSW, that documented six emergency department visits and an endometrial ablation. *Id*. (citing Doc. #7-8, *PageID* #s 1282-83). Plaintiff argues that this omission "is not harmless, given the testimony of the vocational expert, Ms. Nelligan, who indicated that employers would tolerate no more than one absence per month, and that would include coming in later and leaving early. [Her] documented care needs exceed[] these limitations." *Id*.

For the following reasons, the undersigned finds Plaintiff's argument regarding Dr. Dunn's letter and Ms. Vo's letter unpersuasive. Upon review of both letters, Dr. Dunn's letter and Ms. Vo's letter consists of assertions that Plaintiff is disabled, based on Plaintiff's medical treatment and symptoms, but do not opine on any physical or mental functional limitations. (Doc. #7-8, *PageID* #s 1282-83, 1287). As referenced by the ALJ, when there are no opined physical or mental functional limitations in a medical source, the ALJ is not required to analyze or accept that source's disability finding. *See* 20 C.F.R. § 416.920(b)(c)(3)(i) ("Because the evidence listed in paragraphs (c)(1)–(c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we

considered such evidence in our determination or decision, even under § 416.920, [including] statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work.); *Sadler v. Comm'r of Soc. Sec.*, No. 3:19-CV-396, 2021 WL 3578099, at *3 (S.D. Ohio Aug. 13, 2021) (Ovington, M.J.) ("In fact, an ALJ may "reasonably [give] no weight to [a treating physician's] opinion because [the] conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner.") (citing *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020)).  Therefore, the ALJ's decision not to provide any analysis of Dr. Dunn's letter in his disability determination was supported by the Social Security Regulations. (Doc. #7-2, *PageID* #s 55-56); 20 C.F.R. § 416.920(b)(c)(3)(i). Finally, while the ALJ could have permissibly not offered any analysis to Ms. Vo's letter under the Social Security Regulations, "to the extent Ms. Vo's assessments do constitute a medical opinion," he found her letter not persuasive because it was not supported by the record nor was it consistent with normal findings in recent 2024 medical appointments. (Doc. #7-2, PageID #55) (citing Doc. #7-9, *PageID* #s 1664-65, 1669-72). Therefore, the ALJ did not err in his assessment of Dr. Dunn's letter, as he found the only evidence Plaintiff cites in support of her findings—Ms. Vo's letter—to be similarly unpersuasive.

      **B.**    **The ALJ's consideration of Listing 7.18 under Step 3**

At Step Three of the sequential process, the plaintiff carries the burden to show that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). The "listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S.

521, 532 (1990). Consequently, the medical criteria defining the listed impairments has been set "at a higher level of severity than the statutory standard." *Id.* If an applicant meets all of the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy *all* of the criteria to meet the listing.") (emphasis added). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan,* 493 U.S. at 530. ALJs are not required "to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). There is reversible error only where "the record raises 'a substantial question as to whether [the plaintiff] could qualify as disabled' under a listing" and the ALJ declined to address it. *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). As *Smith-Johnson* further elucidates,

> A plaintiff must do more than point to evidence on which the ALJ could have based his finding to raise a "substantial question" as to whether [the plaintiff] has satisfied a listing. Rather, [the plaintiff] must point to specific evidence that demonstrates [she] reasonably could meet or equal *every* requirement of the listing. Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three.

*Id.* at 432–33 (internal citations omitted). (emphasis added).

In this case, Plaintiff alleges that ALJ reversibly erred at Step Three, arguing that he should have found that she met Listing 7.18: repeated complications of hematological disorders because of her diagnosis as a Hemophilia A carrier, complications of hypothyroidism and cardiac disease,

11

and her symptom of fatigue producing a marked limitation in her daily activities. (Doc. #11, *PageID* #s 1920-21).

Listing 7.18 is used to evaluate non-cancerous blood disorders that cause significant functional limitations. To meet this listing, a claimant must document: (1) Repeated Complications: Complications (such as anemia, pain, or fever) must occur on average three times a year, or once every four months; (2) Significant Symptoms: Documented signs such as severe fatigue, malaise, or joint swelling; and (3) Marked Functional Limitation: The disorder must cause a "marked" (serious) limitation in one of the following:

> A. Activities of Daily Living: Difficulty with chores, hygiene, or using public transportation.
>
> B. Social Functioning: Difficulty interacting with others effectively and on a sustained basis.
>
> C. Task Completion: Inability to sustain concentration, persistence, or pace in a work-like setting.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 7.18.

For the following reasons, the undersigned finds Plaintiff's argument unpersuasive. As an initial matter, the ALJ did not find Plaintiff to have a marked limitation in any of the categories that would be necessary for Plaintiff to meet or medically equal Listing 7.18. (Doc. 7-2, *PageID* #s 49-50). In the field of interacting with others, the ALJ found that Plaintiff had a mild limitation, noting that Plaintiff's testimony of interacting with her sons and getting along well with authority "supports a finding that she can interact appropriately with others without excessive irritability, sensitivity or argumentative discourses." *Id*. at 49 (citing Doc. #7-6, *PageID* #s 583-86; Doc. #7-7, *PageID* #s 905-906). Regarding Plaintiff's ability to sustain concentration, persistence, or pace in a work-like setting, the ALJ found her moderately limited, as Plaintiff's many daily activities

supported "a finding that she retains the ability to do the same with respect to work activities." *Id*. (citing *id*.).

Furthermore, contrary to Plaintiff's assertions, the ALJ did not find Plaintiff to have a marked limitation in her daily activities, one of the requirements for Listing 7.18. (Doc. #7-2, *PageID* #49). Rather, he noted that Plaintiff reported that she lived independently, "care[d] for her children, independently manage[d] her personal care, she prepare[d] meals she … clean[ed] with the help of her sons, she travel[ed] by driving a car, she shop[ped] in stores and by computer for food and personal items, she can pay bills and independently manage her finances, she … watche[d] television, [and] she socializes with others by video chat …." *Id*. (citing Doc. #7-6, *PageID* #s 583-86). While acknowledging that Plaintiff reported at the hearing that she could no longer drive due to dizziness, the ALJ also pointed to her statement that she took public transportation or received rides from others at the consultive examination with Dr. Rowland. *Id*. (citing Doc. #7-7, *PageID* #909). Additionally, Plaintiff indicated that, at one point during the alleged period of disability, she could "attend religious services, participate in social clubs and sports, and volunteer" and was minimally able to exercise. *Id*. (citing *id*. at 906). All of these activities that Plaintiff can perform indicate that she does not have a marked limitation in daily activities, a requirement for her to meet or medically equal Listing 7.18 *and* for the ALJ to discuss whether Plaintiff meets or medically equals the listing.

Furthermore, it is Plaintiff's burden to show "specific evidence that demonstrates [she] reasonably could meet or equal *every* requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432. (emphasis added). Plaintiff points to evidence of her symptom of fatigue, arguing that Ms. Vo's letter mentioning chronic fatigue, Plaintiff's seeking care for her fatigue, and her hearing

13

testimony of being "unable to stay awake for longer than two to three hours" as evidence to support a Listing 7.18 finding. (Doc. #11, *PageID* #1920). Additionally, she contends that Plaintiff's hearing testimony that she required help with household chores, breaks while cooking, and assistance in grocery shopping and going down flights of stairs constitute evidence to support a Listing 7.18 finding. *Id*. Regarding Plaintiff's fatigue, the ALJ did account for her subjective complaints and seeking care for fatigue, specifically limiting her to sedentary work and simple tasks. (Doc. #7-2, *PageID* #s 52, 57). However, he pointed to appointments where Plaintiff presented with complaints of fatigue yet received conservative treatment or was found to be "alert and oriented" upon examination. *Id*. at 53, 57 (citing Doc. #7-7, *PageID* #906; Doc. #7-8, *PageID* #s 1255-57). Additionally, he found Dr. Vo's letter not persuasive. *Id*. at 55. Regarding daily activities, the ALJ did cite records that indicated Plaintiff was minimally able to cook/prepare simple meals and that she received help with cleaning from her sons. *Id*. at 49 (citing Doc. #7-6, *PageID* #s 583-86; Doc. #7-7, *PageID* #906). Nothing in Plaintiff's evidence raises a substantial question that she meets or medically equals Listing 7.18. Therefore, the undersigned finds that the ALJ did not err in his Step Three analysis when he did not discuss Listing 7.18.

      **C.**     **The ALJ's Residual Functional Capacity Determination**

An individual's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) (if the claimant's case is at the ALJ hearing level, the

ALJ is responsible for assessing his RFC); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ's RFC assessment must be based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). Further substantial evidence must support the ALJ's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.).

In this case, Plaintiff argues that the ALJ fails to articulate how the combination of Plaintiff's impairments impacts the formulated RFC. (Doc. #11, *PageID* #s 1921-23). Specifically, she contends that the ALJ did not consider her fatigue in combination with her anemia, hypothyroidism, and heart failure. *Id*. at 1922. According to Plaintiff, "[t]his is not harmless error as the RFC makes no allowances for absences or time off task." *Id*. at 1922-23. Additionally, Plaintiff argues that substantial evidence does not support the ALJ's RFC because he mischaracterizes Plaintiff's treatment of menorrhagia as "conservative care" and failed to address records that contained Plaintiff's hysterectomy. *Id*. at 1921.

For the following reasons, the undersigned does not find either of Plaintiff's RFC arguments persuasive. First, as discussed above, the ALJ did account for Plaintiff's subjective complaints and seeking care for fatigue, specifically limiting her to sedentary work and simple tasks. (Doc. #7-2, *PageID* #s 52, 57). He noted several appointments that Plaintiff complained of fatigue, in combination with her complaints of chest pain or syncope. *Id*. at 52-55 (citing Doc #7-7, *PageID* #s 668, 711; Doc. #7-8, *PageID* #s 1255-57, 1473, 1536, 1542, 1547; Doc. #7-9, *PageID* #1677). However, he also noted normal physical findings upon examination at these or following appointments and subsequent conservative treatment. *Id*. (citing Doc #7-7, *PageID* #s 768, 771;

15

Doc. #7-8, *PageID* #s 1255-57, 1543, 1548; Doc. #7-9, *PageID* #1678). This analysis indicates that the ALJ did consider Plaintiff's fatigue in combination with her other impairments and specifically accounted for it within his RFC.

Second, Plaintiff's argument regarding the impact of her menorrhagia and hysterectomy on her RFC is unavailing. In the consultative examination dated February 2, 2022—within the timeframe that Plaintiff endorsed irregular and heavy bleeding, according to Ms. Vo's letter—Plaintiff endorsed that she "could work at a sit-down job I could do from home." (Doc. #7-7, *PageID* #909); (Doc. #7-8, *PageID* #1283). This asserted activity level aligns with the ALJ's RFC limiting Plaintiff to sedentary work. (Doc. #7-2, *PageID* #50). Furthermore, while the ALJ did not specifically cite to Plaintiff's October 17, 2023 full hysterectomy[4], he did cite to 2024 treatment records, one of which Plaintiff "presented with no significant complaints and describe[d] an overall good sense of well-being." *Id*. at 54 (citing Doc. #7-9, *PageID* #1659). Furthermore, that same treatment record is duplicated in the records that Plaintiff alleges that the ALJ did not examine. *Compare* (Doc. #7-9, *PageID* #s 1659, 1757). Thus, Plaintiff has not demonstrated how the ALJ erred in his RFC assessment regarding her menorrhagia or hysterectomy.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

---

[4] The ALJ referenced in his decision that Plaintiff had a hysterectomy on May 26, 2023. (Doc. #7-2, *PageID* #53) (citing Doc. #7-8, *PageID* #s 1430, 1449-51. However, upon review of those records, Plaintiff was discussing at her July 19, 2023 visit a desire to obtain a hysterectomy after endometrial ablation performed on May 26, 2023, proved unhelpful to her continued bleeding, not that she also had a hysterectomy on May 26, 2023. *Id*. Nonetheless, the ALJ was aware that Plaintiff had a hysterectomy when assessing her RFC.

16

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be **AFFIRMED**; and

2. The case be terminated on the Court's docket.

January 30, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).